**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| THERESA POLEZCEK ON BEHALF OF HER MINOR CHILDREN, R.P. AND C.W., and TATIANNA BURISE | * * * * | CIVIL ACTION

NO:  2:25-cv-01490 |
| Plaintiffs | * * | SEC. |
| VERSUS | * * | JUDGE |
| GERALD STICKER, SHERIFF OF TANGIPAHOA PARISH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, WARDEN JERRY MARTIN, IN HIS OFFICIAL CAPACITY, CHIEF DEPUTY JIMMY DAVIS, IN HIS OFFICIAL CAPACITY, MICHAEL BRADY, CHRISTOPHER PETERS, and TURN KEY HEALTH CLINICS, LLC | * * * * * * * * * * | MAG.

**Jury Trial Demanded** |
| Defendants | * * | |

**************************************

## COMPLAINT FOR DAMAGES FOR CONSTITUTIONAL VIOLATIONS, WRONGFUL DEATH, AND SURVIVAL DAMAGES

**Theresa Polezcek on behalf of her minor children, R.P. and C.W.**, and **Tatianna Burise** (hereinafter "Plaintiffs"), competent majors and citizens of the State of Louisiana, file this Complaint for violation of CHRISTOPHER WOODARD'S ("Woodard") civil rights based on the Defendants' deliberate indifference to his apparent and critical medical needs, namely, that he suffered opioid withdrawal, which obviously required pharmacological management, after his intake and pre-trial detention in the Tangipahoa Parish Jail in Amite, Louisiana. The Defendants' deliberate indifference to Woodard's condition resulted in his death and violated his right to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

1

Plaintiffs further submit that Woodard had a disability as defined in the Americans with Disabilities Act and the Rehabilitation Act—specifically, opioid use disorder and withdrawal from its effects—and that the Defendants failed to accommodate that disability, thereby discriminating against him in such a manner that he ultimately died.

In support of these claims, Plaintiffs show as follows:

## I.  JURISDICTION

1. This action is brought pursuant to 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the statutory and constitutional provisions. Plaintiffs also invoke supplemental jurisdiction over claims under state law pursuant to 28 U.S.C. § 1367.

## II.  PARTIES

(Plaintiffs)

2. **Theresa Polezcek** is a person of the full age of majority and a resident and citizen of Tangipahoa Parish, State of Louisiana. R.P. and C.W. are the minor biological daughters of Theresa Polezcek and the deceased Christopher Woodard.

3. **Tatianna Burise** is a person of the full age of majority and a resident and citizen of East Baton Rouge Parish, State of Louisiana. Tatianna Burise is the biological daughter of the deceased Christopher Woodard.

(Defendants)

4. **Sheriff Gerald Sticker ("Sticker")** is a person of the full age of majority and a resident and citizen of Tangipahoa Parish, State of Louisiana, in his individual and official capacity

as the Sheriff of Tangipahoa Parish. At all pertinent times, Sticker was the ultimate policymaker for the Tangipahoa Parish Sheriff's Office ("TPSO"), and was responsible for the hiring, training, supervision, discipline and control of TPSO employees. At all times described herein, the TPSO operated the Tangipahoa Parish Jail, which housed inmates on behalf of the State of Louisiana Department of Corrections. Sticker was responsible for appropriate staff to maintain the care, custody, and control of prisoners in custody at the Tangipahoa Parish Jail. Sticker was responsible for all staffing levels at Tangipahoa Parish Jail, including contracting with medical providers. Sticker was also responsible for the supervision, administration, policies, practices, customs, and operations at Tangipahoa Parish Jail. Sticker was and is a final policymaker, and at all pertinent times was acting under color of law. Sticker is liable both directly and vicariously for the actions complained of herein.

5. **Warden Jerry Martin ("Martin")** is a person of the full age of majority and a resident and citizen of the State of Louisiana, in his capacity as Warden of the Tangipahoa Parish Jail. At all pertinent times, Martin was the Warden of the Tangipahoa Parish Jail, and as such was responsible for the supervision, administration, policies, practices, customs, operations, training, and staffing of Tangipahoa Parish Jail. Martin was and is a final policymaker, and at all pertinent times was acting under color of law. Martin is liable both directly and vicariously for the actions complained of herein.

6. **Chief Deputy Jimmy Davis ("Davis")** is a person of the full age of majority and a resident and citizen of the State of Louisiana in his individual capacity as an employee of Tangipahoa Parish Sheriff's Office and supervisor of deputies. At all pertinent times, Davis was employed by the TPSO and assigned as supervisor to posts at the Tangipahoa Parish

Jail where Christopher Woodard was housed and where he died. Davis was responsible for ensuring appropriate care, custody, and control occurred, including respecting all prisoners' rights, including those of Christopher Woodard, and for communicating serious medical conditions, including health concerns and risks of opioid use disorder and withdrawal from its effects, of prisoners to appropriate medical staff and/or mental health professionals. Davis was also responsible for supervising deputies on their shifts to ensure that deputies under his supervision carried out all duties in accordance with their obligations to respect all prisoners' rights. Davis is liable both directly and vicariously for the actions complained of herein.

7. **Michael Brady ("Brady")** is a person of the full of age of majority and a resident and citizen of the State of Louisiana.  At all pertinent times, Brady was employed by the TPSO and assigned as deputy sheriff to posts at the Tangipahoa Parish Jail where Christopher Woodard was housed and where he died. Brady was responsible for ensuring appropriate care, custody, and control occurred, including respecting all prisoners' rights, including those of Christopher Woodard, and for communicating serious medical conditions, including health concerns and risks of opioid use disorder and withdrawal from its effects, of prisoners to appropriate medical staff and/or mental health professionals.

8. **Christopher Peters ("Peters")** is a person of the full of age of majority and a resident and citizen of the State of Louisiana.  At all pertinent times, Peters was employed by the TPSO and assigned as deputy sheriff to posts at the Tangipahoa Parish Jail where Christopher Woodard was housed and where he died. Peters was responsible for ensuring appropriate care, custody, and control occurred, including respecting all prisoners' rights, including those of Christopher Woodard, and for communicating serious medical conditions,

4

including health concerns and risks of opioid use disorder and withdrawal from its effects, of prisoners to appropriate medical staff and/or mental health professionals.

9. **Turn Key Health Clinics, LLC ("TK Health")** is a company organized under the laws, and a citizen, of the state of Oklahoma. At all pertinent times, TK Health had a contract for healthcare personnel and administration at the Tangipahoa Parish Jail where Christopher Woodard was housed and where he died. As the healthcare contractor to Sticker, TK Health promised to supply, coordinate, and be responsible for the medical care of pre-trial detainees such as Christopher Woodard while complying with the standards set forth by the Louisiana Department of Health and Tangipahoa Parish Jail standards. At all times, TK Health was systematically organized to assume a major administrative role in the delivery of correctional healthcare services at the Tangipahoa Parish Jail, and it provided on-site healthcare services for incarcerated inmates.

### III. FACTUAL ALLEGATIONS

10. On July 22, 2024, Christopher Woodard ("Woodard") arrived at the Tangipahoa Parish Jail after detention, on information and belief, due to an outstanding warrant for operating an off-road vehicle in the roadway and resisting an officer. The jail already held incarcerated pre-trial detainees James Cassidy, Greg Parker, Hein Ho, Brandon Edwards, and Dennis Nelson. These inmates confirm that, from the outset of his incarceration, Woodard displayed symptoms consistent with opioid withdrawal including extreme fatigue, disorientation, inability to eat, and immobility.

11. Greg Parker, the representative of T-dorm where Woodard was held, explained there was no meaningful process during inmate check-in to identify inmates with drug addictions and

no organized medical plan for those inmates who need special care for symptoms of drug and opioid detoxification.

12. Over the course of July 23rd, 24th, and early into the morning of the 25th, at least four inmates – Greg Parker, Dennis Nelson, Brandon Edwards, and James Cassidy – made repeated verbal pleas to jail staff, deputies, and TK Health workers reporting that Woodard was in obvious medical distress and he needed medical care and intervention. These inmate reports included direct appeals during the regularly scheduled nurse visits along with attempts to draw staff attention through informal channels.

13. Greg Parker alleges that when a TK Health nurse was asked to help Woodard during one of the nursing visits on July 24th, the nurse exclaimed, "What you want me to do? I can't do nothing. I can't go over my supervisor…You want me to lose my job?" James Cassidy, an inmate in the same dorm, claimed a similar response from the TK Health nurse on July 23rd when Woodard had fallen in the shower.

14. Greg Parker personally lifted Woodard multiple times after he collapsed inside the dorm and noted that he "ain't move" after one such incident where Woodard's legs went stiff, indicating his possible final moments. Parker reports that a nurse on the scene cried and attempted chest compressions to Woodard's lifeless body, exclaiming that she had instructed Deputy Peters to return Woodard to the medical unit if his vital signs dropped to certain levels, which was not done.

15. Dennis Nelson, who knew Woodard from outside jail, confirmed Woodard was detoxing since at least the time of his intake on Monday, July 22nd, and that Woodard had not eaten. Dennis Nelson, Hein Ho, James Cassidy, Greg Parker, and Brandon Edwards all state that Deputy Peters physically dragged Woodard through the hallway and dropped him on the

6

dorm floor in the early morning of July 25th shortly before his death. Nelson stated, "They had three days to try to do something about it."

16. Hein Ho, who was booked the same day as Woodard, corroborated the early morning dragging incident. Ho stated that Woodard collapsed multiple times in the hallway and could not walk unassisted. Ho personally helped lift Woodard into the dorm, noting that other inmates attempted to place him in bed, but Woodard was physically unable to remain upright.

17. Brandon Edwards asserted that he alerted medical staff days before that Woodard was detoxing and needed help, to which he was told they could not do anything until a supervisor arrived. Edwards said Woodard lay immobile for three days, ate nothing, and needed assistance to talk to the nurses. Edwards was later asked to help carry Woodard's lifeless body to the front after staff failed to timely respond.

18. Deputy Christopher Peters, the officer who transported Woodard back to the dorm during jail call, acknowledged that Woodard told him he was detoxing. Despite observing Woodard frequently collapsing and needing help to rise, Deputy Peters stated he did not consider Woodard's condition serious and chose not to act on radio orders from a person named Bates to return Woodard to medical. Instead, Deputy Peters prioritized duties unrelated to inmate care that resulted in Woodard's death.

19. Deputy Michael Brady confirmed that he saw Deputy Peters escorting Woodard, who collapsed during the movement. Deputy Brady stated it looked like Woodard was "playing that game," insisting he was laying down on purpose to inconvenience Deputy Peters. But Deputy Brady also confirmed that he relayed Bates' radio request to Deputy Peters to return Woodard to the front for medical care. Despite the deputies' awareness of Woodard's

critical condition, both of them ensured Woodard received no appropriate medical care before he died.

20. According to multiple witnesses, Woodard died in the dorm from medical neglect related to opioid withdrawal. His body was only moved to jail medical after inmates found him unresponsive, after which CPR was initiated by staff too late to revive him. Woodard had not eaten for three days and had passed his bowels prior to death, an obvious indication of bodily shutdown.

21. Woodard's death was due to the continued deliberate indifference of jail staff and medical personnel to respond timely and appropriately to Woodard's obvious medical distress caused by opioid withdrawal and detoxification.

22. At all times relevant to this Complaint, Defendants acted under color of state law.

23. At all times mentioned herein, all Defendants named in their individual capacities were employed by Defendant Sheriff Sticker and were acting in the course and scope of their employment with Defendant Sticker, except for TK Health who acted pursuant to its contract with the TPSO.

24. Defendants are liable jointly, severally, and *in solido* for Woodard's death and for Plaintiffs' injuries and damages.

25. Defendants are liable to Plaintiffs for compensatory and punitive damages.

26. Defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of Christopher Woodard. Defendants' actions were the proximate cause of the injuries and death of Christopher Woodard and the damages to Plaintiffs.

IV. **CAUSES OF ACTION**

**COUNT 1:**

**§ 1983 VIOLATION BASED ON ESTABLISHMENT OF A SYSTEM IN WHICH INMATES WITH SERIOUS MENTAL AND PHYSICAL HEALTH ISSUES ARE DENIED ACCESS TO APPROPRIATE MEDICAL CARE**

**SHERIFF STICKER**

27. Defendant Sticker, individually and in his official capacity as Sheriff of Tangipahoa Parish, acted under color of law to violate Christopher Woodard's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Sticker did so through a policy and practice of failing to provide inmates in the custody of the Tangipahoa Parish Jail with access to treatment for their serious mental and physical health needs including detoxification and withdrawal from opioids.

28. Christopher Woodard and Plaintiffs were individually harmed by Defendant Sticker's failure to provide mental and physical health/medical services to inmates at Tangipahoa Parish Jail because this failure resulted in the death of Christopher Woodard, who was deprived of appropriate medical treatment as described above.

29. Defendant Sticker knew or should have known of the policy and practice of failing to provide constitutionally adequate mental and physical health/medical treatment to inmates at the Tangipahoa Parish Jail. He also knew or should have known that such policy and practice would lead to an unreasonable risk of serious harm befalling the inmates in his care. Despite this knowledge, Defendant Sticker chose not to take action to address the risk of harm.

9

30. At all pertinent times, Defendant Sticker acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Christopher Woodard and Plaintiffs by choosing not to provide appropriate medical and mental and physical health services at Tangipahoa Parish Jail.

31. Defendant Sticker is therefore liable to Plaintiffs both individually and, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in his official capacity as Sheriff of Tangipahoa Parish.

### COUNT 2:

### § 1983 VIOLATION BASED ON FAILURE TO TRAIN AND SUPERVISE OTHER DEFENDANTS TO ENSURE INMATES IN OPIOID WITHDRAWAL RECEIVED APPROPRIATE CARE AND MONITORING

### SHERIFF STICKER, WARDEN MARTIN, and CHIEF DEPUTY DAVIS

32. Defendants, Sheriff Sticker, individually and in his official capacity, and Warden Jerry Martin and Chief Deputy Jimmy Davis, in their individual capacities, failed to train and supervise their subordinates to ensure that these subordinates would properly monitor inmates who were undergoing opioid withdrawal.

33. Christopher Woodard and Plaintiffs were directly harmed by this failure to train and supervise because it caused the death of Christopher Woodard, who was neither treated nor monitored in a constitutionally adequate fashion as he went through opioid withdrawal.

34. At all pertinent times herein, Defendants Sheriff Sticker, Warden Jerry Martin, and Chief Deputy Jimmy Davis were aware of the need to train and supervise their subordinates to ensure that they did not violate inmates' rights. These Defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Plaintiffs' father, Christopher Woodard, as described above.

35. Defendant Sticker is liable to Plaintiffs for these failures to train and supervise both individually and, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in his official capacity as Sheriff of Tangipahoa Parish. The other Defendants named in this Count are liable to the Plaintiffs in their individual capacities.

## COUNT 3:

### § 1983 VIOLATION BASED ON DELIBERATE INDIFFERENCE TO CHRISTOPHER WOODARD'S CONSTITUTIONAL RIGHT TO APPROPRIATE MEDICAL CARE AND A REASONABLY SAFE ENVIRONMENT

### SHERIFF STICKER, WARDEN MARTIN, CHIEF DEPUTY DAVIS, MICHAEL BRADY, CHRISTOPHER PETERS, AND TURN KEY HEALTH CLINICS, LLC

36. The above-named Defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Christopher Woodard of his constitutional rights and did deprive him of said rights, specifically the right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. At all times pertinent herein, these Defendants acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Christopher Woodard, by failing to provide mental and physical healthcare treatment and a reasonably safe environment to protect him from the risk of death due to opioid detoxification and withdrawal. Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Christopher Woodard, as described herein, but chose not to do so.

## COUNT 4:

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT BY ESTABLISHING A SYSTEM THAT DISCRIMINATED AGAINST AND FAILED TO ACCOMMODATE A DISABILITY

### SHERIFF STICKER

37. Christopher Woodard was a person with a disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). He suffered from Opioid Use Disorder.

38. The Tangipahoa Parish Jail, which is run by Defendant Sticker and the Tangipahoa Parish Sheriff's Office, is a public entity that must comply with Section 504 and the Americans with Disabilities Act. Upon information and belief, the Tangipahoa Parish Sheriff's Office receives federal funds and must comply with these laws.

39. Section 504 of the Rehabilitation Act requires recipients of federal funds to reasonably accommodate persons with disabilities in their facilities, program activities, and services. Section 504 further requires such recipients to modify such facilities, services, and programs as necessary to accomplish this purpose.

40. The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such services include, *inter alia*, provisions necessary to achieve effective medical care and to protect a person from the risk of death when that person is actively going through opioid withdrawal.

41. Plaintiffs are entitled to relief against Defendant Sticker because the Tangipahoa Parish Sheriff's Office and the individual Defendants named herein, acting in the course and scope

12

of their employment with Defendant Sticker, had notice of Christopher Woodard's disability but failed to treat or make reasonable accommodations for it. Sticker, in his official capacity, was aware that Tangipahoa Parish Sheriff's Office would fail to make reasonable accommodations for Christopher Woodard's disability, as described in this Complaint. Specifically, inmates at Tangipahoa Parish Jail did not receive treatment for their serious mental/physical health needs, including Opioid Use Disorder, and deputies failed to maintain appropriate medical care. Furthermore, despite their ability to do so, Defendants failed to accommodate Christopher Woodard's disability by providing him treatment, appropriately monitoring him, and providing him a reasonably safe environment.

42. The failure to accommodate Christopher Woodard's disability was intentional and/or deliberately indifferent to his rights under Section 504 and Title II of the ADA and was a proximate cause of his death.

## COUNT 5:

### NEGLIGENT, RECKLESS, INDIFFERENT AND/OR INTENTIONAL CONDUCT RESULTING IN INJURY AND DEATH

### SHERIFF STICKER, WARDEN MARTIN, CHIEF DEPUTY DAVIS, MICHAEL BRADY, CHRISTOPHER PETERS, AND TURN KEY HEALTH CLINICS, LLC

43. The Defendants named in this Count, acting individually and together, engaged in a course of conduct and conspired to engage in a course of conduct that caused injury and harm to Christopher Woodard and ultimately led to his death. At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Christopher Woodard. Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent

13

the tortious conduct of others, as described herein, but failed to do so. They are therefore liable to Plaintiffs under Louisiana state law for the torts of neglect, abandonment, assault, and battery pursuant to Louisiana Civil Code articles 2315.1 and 2315.2., the respective survival and wrongful death statutes.

## COUNT 6:

### RESPONDEAT SUPERIOR

### SHERIFF STICKER

44. At all relevant times, the individually named Defendants were acting in the course and scope of their employment with Defendant Sticker. Defendant Sticker is therefore liable under the doctrine of *respondeat superior* for the actions and inactions of the individual Defendants, as described herein, except for TK Health who acted pursuant to its contract with the TPSO.

## V. DAMAGES

45. As a result of the actions and inactions of Defendants as described above, damages have been incurred as follows:

   a. Christopher Woodard (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

   b. R.P. and C.W., minor daughters of Christopher Woodard, suffered emotional pain and suffering, past, present, and future; loss of support; loss of love, affection, and companionship of their father, Christopher Woodard; and incurred funeral and other expenses associated with his death.

   c. Tatianna Burise, major daughter of Christopher Woodard, suffered emotional pain and suffering, past, present, and future; loss of support; loss of love, affection, and

companionship of her father, Christopher Woodard; and incurred funeral and other expenses associated with his death.

## VI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, **Theresa Polezcek on behalf of her minor children, R.P. and C.W., and Tatianna Burise**, pray that after due proceedings are had that there be judgment rendered herein in Plaintiffs' favor and against all Defendants, **Sheriff Gerald Sticker, Warden Jerry Martin, Chief Deputy Jimmy Davis, Michael Brady, Christopher Peters, and Turn Key Health Clinics, LLC**, individually, jointly, and *in solido*, as follows:

a.  Compensatory and punitive damages;

b.  Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b);

c.  All costs of these proceedings and legal interest; and

d.  All other relief as appears just and proper to this Honorable Court.

## VII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted:
**KLEINPETER │ BOUTWELL**

BY: _____
        Gary N. Boutwell, II (#22739) – T.A.
        Robert E. Kleinpeter (#7448)
        Hester Dornan Lemoine (#34525)
        6655 Jefferson Highway
        Baton Rouge, Louisiana 70806
        Tel: (225) 926-4130
        Fax: (225) 929-9817
        gary@ksbrlaw.com
        rek@ksbrlaw.com
        hesterd@ksbrlaw.com

        -and-

15

Robert J. Carter (#1752)
P.O. Drawer 27
Greensburg, Louisiana 70441
Tel: (225) 222-4191
Fax: (225) 222-4193
robbycarter@centurytel.net

*Co-Counsel for Plaintiffs*